First case this afternoon is Department of Labor v. E.R.H. That's case number 4110943. For the appellant, we have David Cox for the appellate. John Schmidt, Mr. Cox. If it pleases the court. Counsel. Counsel. I've been a little bit under the weather. I'll try to make sure I'm heard. I appreciate, again, the opportunity to be a part of this high-level process. I'd like the court to consider an illustration to start. I know that the court has read the briefs and will be well prepared for today. But I'd like to point out that probably where the Attorney General and our position are in agreement is much more vast than where they differ. Consider this illustration. I don't think that the Attorney General would argue that the delivery of water and sewer services for municipalities in itself constitutes public works. No such argument has been made. On the other hand, as a former mayor of the village of Beeman, I'm aware of projects that were clearly public works. The village erected a water plant. It put a new well online and had to install a connection. It upgraded the sewer system. And each and every time, the village had to pass an ordinance and have a contract that called for prevailing wage to be paid because these projects were clearly modifications. It is my perception or my understanding, Justices, that the difference between the Attorney General position and the appellants is precisely what happened in this case. Consider it's January, that the ground is frozen, and that an older set of pipes can't handle the stress of zero degrees and winds up rupturing. So the water system is at risk. 2,000 residents don't have any water. There's a public health risk that now requires a boil order. And in the middle of a cold, freezing night, the village or the mayor has to send a crew out to excavate the hole, which will quickly fill with water because there's a rupture, and do something to A, seal the system, and B, make sure that the system has enough pressure to carry water and that it's not contaminated during the process. It is my understanding, if the Attorney General's position were to prevail on that kind of an emergency repair, and it seems to me like we're talking about emergency repairs here because we're not arguing the modification, in that particular instance, the village under the Attorney General's position would have to fall back and pass an ordinance, have a statute, or have an ordinance, authorize a contract, sign a contract with ERH to make sure the prevailing wage would be paid, because the argument would be that by sealing this broken pipe that was already in place, ERH has effectively modified the system, or is undergoing a public works project. And I'm not sure that that's what the General Assembly would intend. So our main argument in this case is that it's clear under the Prevailing Wage Act that the General Assembly intended to exempt public utilities. I know that we're all familiar that there's a position in the Prevailing Wage Act that says public works do not include work done directly by a public utility company. Where we all run into some ambiguity, and I suppose it's this Court's obligation and challenge to resolve in light of a lot of, well, just not a lot of cases on point in Illinois case law, is the fact that we have to look elsewhere for the definition of public utility and not necessarily within the Prevailing Wage Act. And as we've argued, under the Public Utilities Act, that's one place the Court can look to see a consistent definition offered by the same General Assembly on what a public utility is. And specifically within the Public Utilities Act, it identifies that corporations that operate or manage for public use, the delivery of water and disposal of sewage, both of which are involved here, this is primarily a water case, but they do both for the village and be met, are indeed public utilities. ERH is a corporation that does exactly that. But as even the Attorney General pointed out in their brief, one can move beyond just the public utilities definition to a myriad of cases from Springfield light on that identify certain characteristics of public utilities. And I won't read extensively because I know that you don't prefer that, but there are things that indicate that public utilities are companies that undergo activities that are for the public good, that treat everybody the same, that offer water or sewage service. It does specifically mention that as a public utility within the Public Utilities Act. And that essentially, everybody is treated equal. And in this case, ERH would apply. It's a water delivery system. It clearly falls under the concept of a utility. And ERH's responsibility is to aid in the delivery of water throughout the village and be met to everyone who pays for the service. So when you look at our case, Springfield Light, or move through the appellee's cases from other appellate districts that seem to support Springfield Light, you see this language that talks about the delivery of commodity or service, treating everybody the same, being useful to the public. The service is the very reason for the existence of a public utility, and so forth. And they even have a case which mentions specifically a public utility involves the delivery of water, gas, electricity, or I think it mentions certain utility services like telephone service. That's our primary argument. And I would concede to all of you that I think our whole hierarchy of arguments rests on the fact that we believe ERH is a utility. Now, there are other aspects of the statute that we've touched on in terms of the Public Works Act. And we believe that the Public Works section doesn't apply. First of all, we believe ERH has already been exempted, but that this isn't a Public Works type of activity. We recognize that the Attorney General has pointed out that within the Public Works exception in the Public Utilities Act that they mention specific items like maintenance and repair. But that would get to the equipment and the modification of the overall system. If one is already exempted by the Public Utilities exemption, then it would not follow that now you're going to be categorized as Public Works because you're conducting maintenance or repair. Again, in this case, it was emergency repair. And finally, our argument relates to the issue of public funds. The Act basically makes a point out of the utilization of public funds for these types of projects. I actually was here 14 years ago on a case between ERH and the City of Monticello that this court decided in ERH's favor. I don't know that it's official precedent because I believe it was Rule 23, if I remember. But the issue there was whether the ERH contract money from the City of Monticello came out of public funds or did it come out of special funds. And the court determined that because user fees had to be put in a special fund under municipal law, that essentially special funds were, by statute and by mandate, segregated from the general tax funds. And that's certainly the case here. Within the contract between ERH and BMIN, the village is required to pay ERH out of user fees for the water service. There is no special tax assessment. The general property tax assessment doesn't apply. It's all within the special fund. So, again, I would rest primarily on the public utility exception and the public utility argument and rely on this court to define where public utility fits in the context of other cases and statutes. But we also don't believe that ERH qualifies as a public works project in terms of emergency repairs and that the state's position that it comes out of public funds applies either. What's our standard of review? I think the Attorney General is correct. I think it is de novo, and that's why I'm not addressing the issue of the motion to reconsider or even the subpoena at this point. I think the whole ballgame is what this court considers in terms of the definition of public utility and whether or not there's an exception. So I can spare you additional argument. How often does somebody in my position do that? Not often enough. Okay. If there are no more questions, that's what I have. Thank you, Judge. Mr. Schmidt. Thank you, Your Honors. I'm John Schmidt from the Attorney General's Office, appearing on behalf of the Department of Labor. And I tend to agree with counsel that the public utility question is really paramount in this appeal. There's one minor correction I would – well, I can't correct something in their reply brief, but I wanted to express some disagreement with something they said. On page 11, they said that they have received documentation from the ICC, the Interstate Commerce Commission, regarding placement of water pipes. But what the record reveals is the Department issued a request for production of documents from them and asked if they had sent any documentation or received any from the ICC within the last 10 years. And they said none exists. And that's on page 88 of the record. In response to another inquiry in that request to produce, the ERH said they had received some documentations from a different state agency, and they did provide us with those. But that was not the Interstate Commerce Commission. And our position, of course, is that ERH is not a public utility. Just before you move on to that, counsel, are you saying on page 11 of the reply brief, I guess the first sentence on that page is incorrect? It says, while the previous position still holds true, ERH has received documentation from the Interstate Commerce Commission? Yes, that's what I said. That's incorrect? Yes. Okay. And the record at page 88 does reveal that they said that they had no documentation from the ICC or sent to the ICC. Okay. They did provide us documentation with a different agency. I could tell you what agency, but I don't believe the documents are in the record, so I'm reluctant. No, that's it. Okay. I don't want you to go outside of the record. Why shouldn't this court apply the definition of a public utility as given to us under the Public Utilities Act? I think that should be an important consideration, but I think there are other provisions in the Public Utilities Act and in the common law that need to be considered as well. For example, there is a provision in the Public Utilities Act, and that's section 8101, that says that a public utility assumes the duty of providing a service to the public indiscriminately on equal terms. ERH says they do that, but I don't think the record supports them. And I don't want to quarrel with them on whether they provide some benefit to the public. I think they do, indirectly. But they're providing the services they provide as a contractor with the village of the men, and their duties are to the village. And I think that's an important distinction. And another important part of the definition of public utility is section 3105B. And unfortunately, it's a badly worded section. It basically starts out by saying public utility, that the following are not public utilities, and then they say a public utility basically that is either owned or maintained by a government entity, including a municipality, or one that is just owned by the municipality, and that is maintained by another party. We think the court should consider that provision, and also the provisions of the Municipal Code concerning waterworks. I think section 3105B, the exclusion there, is designed for situations like this, where a municipality owns waterworks, and it's designed to take it out of public utility treatment, and to put it within these waterworks provisions of the Municipal Code, which are found at 65 ILCS 11-130-1. So I think that's an important consideration as well. And also I would ask the court to consider that if this is a public utility, it is somewhat strange that they don't have any contact with the Interstate Commerce Commission, which regulates public utility. And I believe our brief says if they're a public utility, they should be doing things like paying a tax on their gross revenue to help support the Interstate Commerce Commission, and that would be at 220 ILCS 5-2202. Another thing they should be doing is filing some sort of security plan for the facility with the Interstate Commerce Commission on an annual basis, and that obligation is set forth in 220 ILCS 5-2401. And if they haven't been sending any documents to them, they obviously haven't been doing those things. And the contract does provide some importance between ERH and Dement, does give, there's no question it gives ERH some important responsibilities in terms of the water system, and we don't dispute that. But there are some limits to it too. The contract's on the record at page C83, and it does give Dement maintenance and repair responsibilities and also the responsibility of compliance with the Environmental Protection Act, important things. But the ERH does not, under the contract, have responsibility for the water tower. It doesn't incur the costs of repairing water or sewer mains if more than 20 feet of lines are involved. They don't incur the cost of equipment replacement. There's nothing in the record that indicates that they're involved with customer billing or collections, which I believe you would expect if they were offering their service to the public as opposed to offering it to Dement. And these Water Works provisions of the Municipal Code require various accounts to be maintained, including an operations and maintenance fund, and the record doesn't indicate that they play any role in maintaining those funds. So our position is they're a contractor, they do important work in terms of the village's water system, but that would not qualify them as a public utility under the Public Utilities Act or under the common law, and also they're not acting like a public utility. They're not interacting with the ICC as a public utility would be expected to interact with the ICC. And there's another provision, too. If they're really a public utility, they would have to get permission from the ICC under, I believe it's Section 8-5A of the Public Utilities Act, they'd have to get permission under most circumstances to cease offering their service. Well, I don't think a contractor would be expected to follow that. They operate under a five-year contract, not an infinite one. So if they're really saying they're a public utility, they're imposing some pretty interesting obligations on themselves. We also believe that the funds involved in this case were public funds, and that comes into play in... Do you want me to stop? Thank you. The funds were public funds, which would mean that whether public funds were involved was part of the definition of public works, whether they were engaged in public works under Section 2 of the old Prevailing Wage Act that was in effect in 2008. The requirements are a little different now, and I'll explain that in a moment. ERH is relying largely on the City of Chicago v. Croson case. That involved, though, what would constitute public funds of the state under the Auditing Act, which gives the Auditor General power to conduct audits regarding state funds. And the court held that federal grants to airports weren't public funds of the state. It was federal money. I believe in that case that there had been some relatively small state grants to Midway Airport, and the Auditor General was allowed to audit those, but not the federal money. I don't think that sheds much light on what constitutes public funds of a municipality. I would point out that these Water Works provisions of the Municipal Code, Section 11, which is at 65 ILCS 5-11-130-11, would allow taxpayers to inspect required annual audits of the funds that a municipality is required to have, including an operations and maintenance fund. And I think it would be odd to allow the public to do that, to allow taxpayers to do that, if these were not public funds. As of January 1, 2010, Section 2 has been amended so that now if money on a project is provided by or through a political subdivision of the state, that's sufficient to satisfy the requirement. And here we clearly have money passing through or provided by or through the Village of the Men. And as the Sackville construction case indicated, the legislature indicated an intent that this be a clarification and not a change in existing law. So our position is public funds are definitely involved here. And the final issue, I think I have two more issues to touch on. One very quickly is repair work is definitely within the definition of what constitutes construction under both Sections 2 and 3 of the Prevalent Wage Act. And in this case, the Department was looking for documents that I believe related to water main repairs. So that type of work would be covered by the Prevalent Wage Act. It does fall within the definition of construction. And finally, on the subpoena issue, the Department's lawyer, or ERH's lawyer at the time, Mr. Cox was not their lawyer then, asked the Department to contact him if it had questions or wanted documentation about ERH's position that it wasn't subject to the Prevalent Wage Act. That's why the subpoena was served upon the lawyer and not on a registered agent. But I think under these circumstances, we move to cite additional authority on this question. And I believe in this situation where in any event ERH had time and an ample opportunity to contest the subpoena, which it did vigorously, it hasn't suffered prejudice and the subpoena shouldn't be quashed as a result of any problems with service. And that's really all I've got to present to you. Okay, seeing no questions, thank you very much. Thank you, Your Honor. Rebuttal now. Very briefly, Justice Turner, I have four very quick points. I'm not going to try to respond to every point. Of course, that's why we briefed the case. But four very quick points. First of all— Oh, did you brief the case? I'm sorry? You briefed the case? Yes, Your Honor, I did. Some reason you didn't put your name on the front page? I wasn't aware of that. It would have been inadvertent, Your Honor. First point, on the issue of the notices from the ICC, what happened was we answered interrogatories and at that point in time ERH had no record of ever receiving a notice from the ICC. Oddly enough, as this case was pending late in the proceedings, we did get a notice from the ICC on a site in Gilman and we forwarded that to the Attorney General. If that didn't make its way into the record, then I understand this Court can't consider it, but I don't think that matters. Because the Public Utilities Act recognizes two types of public utilities. Specifically, in 220-ILCS-5-3-105, it recognizes when it's talking about the context of public utilities like power companies and coal and so forth that would be directly, actively regulated by the ICC. The statute says, quote, public utility does not include, however, public utilities that are owned and operated by political subdivisions or operated by any of its operating agents. So I think what the Public Utilities Act, which predated the Illinois Environmental Protection Act, is recognizing that you have this historical base of regulation for the ICC, but we can't ignore the advent of environmental law. The National Environmental Policy Act in 1969 triggered the advent of federal environmental law, the creation of US EPA, the Illinois Environmental Protection Agency, and all of the Illinois Environmental Protection Agency authority over water and sewer systems comes from Clean Water Act and the Safe Drinking Water Act is authorized by the federal level and is parodied and made more stringent at the state level. And I think what the Public Utilities Act is recognizing is Illinois EPA has primary regulatory authority over sewage and water treatment plants. They inspect them. They have to approve plans. They do testing. That's where all the municipalities and agents have to report test results. They have to approve any operating agents. They are the ones who conduct enforcement activities. It would be redundant for the Illinois Commerce Commission to have exactly the same intensive oversight as the Illinois Environmental Protection Agency. So I think the Public Utilities Act makes it clear that there are these historical utilities that are regulated by the ICC and there's this whole new body of regulatory activities that are regulated by EPA. Finally, I would respectfully suggest that if this court concludes that ERH is not a public utility, that it would basically declare the contract between ERH and BEMET and every similar contract in the Fourth District unlawful and illegal on their face in that it doesn't require a prevailing wage for emergency repairs during the maintenance and operations of systems. Thank you all for the opportunity. Counsel, I'm not sure this court ever specifically ruled on the motion for leave beside additional authority filed by Mr. Schmidt. Do you have any objection? I have no objection to that. The court will then consider the additional authority. If we had ruled on that, I apologize for being redundant, but I don't think we ever specifically had done so. Thanks to both of you. The case is submitted and the court stands at recess.